IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WILLIAM L. ISAAC,**<br><br>**Defendant.** | **Case No. 3:18-CR-30095-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Compassionate Release under the First Step Act filed *pro se* by Defendant William Isaac (Doc. 52). Isaac asks the Court to reduce his sentence to time served because he was recently diagnosed with End-Stage Renal Disease ("ESRD"). The United States opposes a reduction in sentence (Doc. 58). For the reasons set forth below, the motion is granted.

## BACKGROUND

On March 22, 2019, now-retired Judge Michael J. Reagan sentenced Isaac to 15 years in prison for two counts of distributing child pornography and one count of receipt, to be followed by five years of supervised release. (Doc. 58, p. 4).

While on pretrial release, Isaac violated his conditions by viewing child rape stories. (Doc. 49, p. 27). However, when confronted by the pretrial officer, he acknowledged that "[t]here is something wrong with me" and requested mental health treatment. (Doc. 58, p. 14). He was also extremely cooperative with the investigation and

the prosecution. Considering these mitigating factors, along with his severe medical issues at the time—including chronic kidney disease, congestive heart failure, atrial fibrillation, and a recent stroke and heart attack, among other serious cardiac conditions—the Court sentenced him to the mandatory minimum sentence of 15 years. (Doc. 56, pp. 10-16).

In 2020, about 18 months into his sentence and during the COVID-19 crisis, Isaac petitioned this Court for compassionate release. (Doc. 41). He argued that his various health issues placed him at a high risk of severe complications if he were to contract COVID-19. In its order denying the motion, the Court cited to the pre-trial release incident and explained that it is "concerned that such a short sentence would fail to deter Isaac from further criminal conduct and, thus, would place the community at risk of additional crimes." (Doc. 51, p. 4).

Isaac is now seven years and four months into his 15-year sentence. He has continued to suffer health issues, including another heart attack and two bouts of COVID-19. (Doc. 52, p. 8). In late 2025, he was diagnosed with ESRD. (Doc. 58-1, p. 3; Doc. 52, pp. 8-9). Isaac now once again petitions the Court for "Compassionate Release so he can live out his remaining time dealing with this terminal condition while trying to repair his relationships with his children." (*Id*. at p. 10).

## LEGAL STANDARD

Generally, a court cannot modify a sentence once it has been imposed. 18 U.S.C. § 3582(c). Compassionate release represents a narrow exception to this rule. *United States v. Glover*, No. 04 CR 940, 2024 WL 4753811, at *1 (N.D. Ill. Nov. 12, 2024). Under 18 U.S.C.

§ 3582(c)(1)(A), a court may grant a defendant's motion for compassionate release after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). No exhaustion issue has been alleged in the present case.

Once the exhaustion requirement is satisfied, the court considers (1) whether extraordinary and compelling reasons warrant a sentence reduction and (2) whether the reduction is appropriate in light of the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Black*, 715 F. Supp. 3d 1069, 1073 (N.D. Ill. 2024); *United States v. Williams*, 65 F.4th 343, 346 (7th Cir. 2023). Specifically, under § 3553(a), the court should determine whether the elapsed sentence sufficiently "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense" and whether the defendant "is a danger to the safety of any other person or to the community." 18 U.S.C. § 3553(2)(A) (first quote); U.S. SENT'G GUIDELINES MANUAL § 1B1.13(a)(2) (U.S. SENT'G COMM'N 2023) (second quote).

In 2023, the Sentencing Commission issued a policy statement explaining that certain medical circumstances may constitute an extraordinary and compelling reason for a sentence reduction. One such circumstance is if a "defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic

lateral sclerosis (ALS), *end-stage organ disease*, and advanced dementia." U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(1)(A) (U.S. SENT'G COMM'N 2023) (emphasis added). Other extraordinary and compelling reasons for reduction include the age of the defendant, family circumstances, and if the defendant is a victim of abuse while in custody. *Id*. at (2)-(4).

Finally, the Commission added a "catch-all" provision. It explained that "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described [above], are similar in gravity to those described [above]," may rise to the level of extraordinary and compelling. *Id*. at (5).

The defendant ultimately bears the burden of establishing that his circumstances are extraordinary and compelling. *United States v. Barbee*, 25 F.4th 531, 532 (7th Cir. 2022).

## DISCUSSION

### I. Extraordinary and Compelling Reasons

Isaac presents two extraordinary and compelling reasons for his early release. The Court considers each in turn.

#### *A. Medical Circumstance*

In late 2025, Isaac reached stage 5 kidney disease and was diagnosed with ESRD. (Doc. 58-1, p. 3; Doc. 52, pp. 8-9; Doc. 58, p. 11). This is in addition to his numerous other medical issues, including congestive heart failure, atrial fibrillation, a past stroke, multiple heart attacks, and diabetes. (Doc. 56, pp. 10-16; Doc. 52, p. 8).

Under the plain language of the Commission's guidelines ("examples [of a terminal illness] include . . . end-stage organ disease"), Isaac's ESRD qualifies as an

extraordinary and compelling reason. U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(1)(A) (U.S. SENT'G COMM'N 2023). Further, as recognized by the Government, this same Court has already held that ESRD is a qualifying terminal illness. (Doc. 58, p. 9); *see United States v. Schofield*, No. 19-CR-40034-JPG, 2024 WL 4235754, at *4 (S.D. Ill. Sept. 19, 2024) ("Even independent of [the sentencing guidelines], the Court would find that end-stage kidney disease qualifies under 18 U.S.C. § 3582(c)(1)(A)(i) as an extraordinary and compelling reason for release."); *see also United States v. Alexander*, 2024 U.S. Dist. LEXIS 183077, at *9 (S.D. Ill. Oct. 7, 2024) (explaining that if the defendant's condition had "progressed to stage 5," the Court would have treated it as a qualifying terminal illness).

The Government does not convincingly argue otherwise. Its most plausible contention is that Judge Reagan foresaw the progression of Isaac's kidney disease but still found the 15-year sentence appropriate. (Doc. 56, p. 14) ("If you have stage four, the next stage is five, which is dialysis and that means your kidneys aren't functioning at all."). However, this does not defeat a request for early release. The Commission has explicitly stated that "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." U.S. SENT'G GUIDELINES MANUAL § 1B1.13(e) (U.S. SENT'G COMM'N 2023).

Regardless, however, there is a second, perhaps even more extraordinary and compelling reason in Isaac's case.

*B. Other Extraordinary and Compelling Reason*

Isaac's circumstances present a potentially fatal catch-22.

His predicted lifespan is four to six years, and survival beyond that requires a kidney transplant. (Doc. 59, p. 1). He was recently placed on the Bureau of Prisons' list for a new kidney, which has an estimated wait time of five to seven years. (*Id.*). However, at the time of filing his reply, Isaac was scheduled to be released in 5.5 years—a release date that would "disqualify him for a transplant" within the BOP. (*Id.*). If he is released before receiving a transplant, which is very possible on these facts, Isaac will have to join the National Kidney Transplant Waiting List from the bottom, facing an additional wait of two to five years, or longer.[1] So even if Isaac survives until his release date, which itself is uncertain, he is unlikely to survive much beyond it.

In effect, his prison sentence would also become his death sentence, depriving him of the opportunity to obtain life-sustaining treatment. This is not what Judge Reagan intended when he said, "[I] will not put you away for life. You do your time and you move on." (Doc. 56, p. 15).

These circumstances undoubtedly qualify as extraordinary and compelling.

## II. Sentencing Factors

The presence of extraordinary and compelling reasons is not alone enough to justify an early release. The Court must also consider the 18 U.S.C. § 3553(a) sentencing factors, including whether the elapsed sentence sufficiently "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense" and whether the defendant "is a danger to the safety of any other person or to

[1] *The Kidney Transplant Waitlist*, NATIONAL KIDNEY FOUNDATION, https://www.kidney.org/kidney-topics/kidney-transplant-waitlist (last visited Sept. 22, 2026).

the community." 18 U.S.C. § 3553(2)(A); U.S. SENT'G GUIDELINES MANUAL § 1B1.13(a)(2) (U.S. SENT'G COMM'N 2023). In Isaac's case, the Court concludes that these factors do not counsel against reducing his sentence.

First, Isaac's elapsed sentence sufficiently reflects the seriousness of his offense and promotes respect for the law. The circumstances now are materially different from those presented by his first motion for compassionate release (Doc. 41) in 2020. Isaac was only 18 months into his sentence then, leaving the Court "concerned that such a short sentence would fail to deter Isaac from further criminal conduct and, thus, would place the community at risk of additional crimes." (Doc. 51, p. 4).

Today, he has served almost half of his 15-year sentence. And while this alone may not suffice, the presence of other factors, including that he is not a danger to the community as discussed below, weighs in Isaac's favor. *Compare United States v. Cepaitas*, No. 3:17-CV-30151-NJR-1, at *8-9 (S.D. Ill. Aug. 12, 2020) (finding in a case where defendant did not pose a danger to the community that serving half his sentence sufficed) *with United States v. Glasper*, 854 F. App'x. 748, 750 (7th Cir. 2021) (deciding in a case where defendant could still "endanger the community," that serving only "about half of his twenty-year sentence" did not suffice).

Further, Isaac's current sentence, as presently structured, may operate as a de facto life-ending term—a result that justice does not demand. Judge Reagan did not intend for Isaac to pay for his crime with his life.

Finally, the Government has not adequately shown that Isaac still poses a danger to the community. While it urges the Court that he still is, the Government brings no new

evidence to support this claim. Instead, it points to the horrific nature of his offenses, a pre-trial release violation, and the fact that eight years ago "Isaac was still able to commit the charged offenses while suffering from these same medical conditions." (Doc 58, pp. 13-15).

Notably, however, Isaac's prison record is impeccable. He has no history of infractions or disciplinary incidents in the last seven years. (Doc. 52, p. 16). He has also been a contributing member to his prison community: teaching Adult Continuing Education classes, leading religious services, and maintaining consistent, voluntary employment. (*Id*. at 9). The Court also received a letter in support from his brother, Robert Isaac, who asserts that a strong support system of "close friends, community organizations, and the Veteran's Hospital" awaits Isaac when he is released from incarceration. (Doc. 54). Finally, Isaac scored a "minimum" on his Recidivism Risk Assessment—the lowest risk score possible.[2] In light of these facts, the Court does not believe that Isaac poses a threat to the public's safety.

As such, 18 U.S.C. § 3553(a) does not counsel against Isaac's early release.

## CONCLUSION

For these reasons, the Court finds that a sentence reduction is appropriate and **GRANTS** the *pro se* Motion for Compassionate Release filed by Defendant William Isaac

[2] The National Institute of Justice has found this test to "display a high level of accuracy in [its] ability to predict recidivism. Findings also indicate that the risk level categories—the probability that an individual has a minimum, low, medium, or high likelihood of recidivating—provide meaningful distinctions of risk. In other words, individuals in higher risk level categories have higher average recidivism rates." *Predicting Recidivism: Continuing to Improve the Bureau of Prisons' Risk Assessment Tool*, NAT'L INST. OF JUSTICE (Apr. 19, 2022), https://nij.ojp.gov/topics/articles/predicting-recidivism-continuing-improve-bureau-prisons-risk-assessment-tool.

(Doc. 52). The Court **STAYS** this Order for **10 days** to allow the United States Probation Office to investigate and approve Isaac's proposed release and housing plan (*See* Doc. 52, pp. 17-28). The USPO shall complete a memo detailing the results of its investigation and disclose the memo to all parties.

The Court also **DIRECTS** the United States Probation Office to seek whatever modifications to the terms and conditions of Isaac's supervised release—including home detention, location monitoring terms, and any third-party notification or supervision conditions—it deems appropriate under the circumstances.

The Clerk of Court shall forward a copy of this Order to the United States Probation Office, Attn: Jennifer Parker, and to the United States Marshals Service, who shall ensure that the Bureau of Prisons promptly receives a copy.

**IT IS SO ORDERED.**

**DATED: September 23, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**